UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE URZUA, | No. 2:23-cv-02772-EFB |
| Plaintiff, | |
| v. | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits under Title II of the Social Security Act. ECF No. 1. The parties' cross-motions for summary judgment are pending. ECF Nos. 14 & 21. For the reasons provided below, plaintiff's motion for summary judgment is granted and the Commissioner's motion for summary judgment is denied.[1]

**I.     Background**

On October 15, 2020, plaintiff filed an application for disability insurance benefits (DIB) under Title II of the Social Security Act (Act), alleging disability beginning August 1, 2020.[2]

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings in this action, including judgment, pursuant to 28 U.S.C. 636(c)(1). ECF No. 12.

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is

1

Administrative Record (AR) 25. Plaintiff alleged that he was disabled due to Crohn's Disease, colitis and severe ulcerative disease. AR 64. Plaintiff's application was denied initially and upon reconsideration. AR 25. After a telephonic hearing before an administrative law judge (ALJ) on January 3, 2022, at which plaintiff was represented by counsel (AR 749-775), the ALJ published an unfavorable decision on July 7, 2022. AR 25-37.

At the hearing, plaintiff testified that he was furloughed from his job delivering cars for Tesla in March 2020 due the Covid-19 shutdown, after suffering from severe ulcerative colitis since 2019. AR 757-759. In the summer of 2020, his condition worsened, and though he tried to return to work in August, he only lasted for one day before having to stop working due to his symptoms, which included a frequent need to use the bathroom, leakage, pain, and fatigue. AR 757, 760-762, 770. In November 2021, plaintiff returned to full-time work, even though his

---

defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 42 U.S.C. §§ 423(d)(1)(A), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The steps are:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id*.

2

condition had not improved, because his disability insurance ran out. AR 763-764. He "only worked about five weeks" and otherwise used vacation and sick days because he expected to undergo surgery soon and "was scared to get caught without insurance." AR 763-764; *see also* AR 28. Plaintiff testified that he was easily fatigued and took much longer to complete tasks than in the past. AR 768. He continued to have symptoms such as the frequent need to use the bathroom, leakage, and blood in his stool. AR 768-770.

Vocational expert (VE) Gloria Lasoff testified that plaintiff had past work as a delivery driver (medium exertional level) and an interpreter (sedentary level). AR 771. She testified that being off-task ten percent of the time or absent more than one day a month on an ongoing basis would preclude competitive work. AR 772.

The ALJ determined that plaintiff had not been under a disability during the period at issue (August 1, 2020 through July 7, 2022), finding as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2025.

2. The claimant engaged in substantial gainful activity during the following periods: November 6, 2021 to the present.

3. However, there has been a continuous 12-month(s) period during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.

4. The claimant has the following severe impairment: irritable bowel syndrome ulcerative colitis.

5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

6. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work.

7. The claimant is capable of performing past relevant work as an interpreter. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

8. The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2020 through the date of this decision.

AR 28-67.

## II.  Standard of Review

The court will uphold the Commissioner's decision that a claimant is not disabled if substantial evidence in the record supports the Commissioner's findings of fact and the Commissioner applied the proper legal standards. *Schneider v. Comm'r of the SSA*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## III.  Claims

Plaintiff claims that the ALJ made the following errors: (1) the ALJ erred by failing to incorporate the assessed mild mental limitations into the residual functional capacity (RFC); (2a) the ALJ erred by failing to consider whether plaintiff was under a disability for a closed period lasting 12 months; and (2b) the physical RFC is not supported by substantial evidence.

## IV.  Analysis

### 1.  *Mild Mental Limitations*

Plaintiff argues that the ALJ erred by failing to incorporate the assessed mild mental limitations into the RFC, and that this error was harmful because plaintiff was found capable of performing the mentally demanding job of interpreter. Defendant counters that the ALJ was not

4

required to include mild mental limitations in the RFC, and did not err.

The ALJ found plaintiff to have mild limitations in the mental functional areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.[3] AR 29. In making these determinations, the ALJ considered plaintiff's testimony that he could pay bills, handle money, and manage finances on a home computer; leave home on his own via bike, car, or walking; and was found to have average intelligence in a consultative exam. AT 24. The ALJ further noted that plaintiff reported that he could get along with authority figures and that he had never been fired for problems interacting with others. AR 29. The ALJ also noted that plaintiff could tend to his personal care, cook, and do household chores, and that he denied any psychotropic medications or psychiatric hospitalizations. AR 30.

Two State agency psychological consultants found plaintiff to have non-severe mental impairments[4], and the ALJ found these opinions persuasive. AR 30.

On April 12, 2021, consultative examining psychologist D. Thigpen, Psy.D., evaluated plaintiff via videoconference. AR 455. The resulting medical opinion noted that plaintiff's "concentration, persistence and pace appeared unimpaired." AR 458. As to functional limitations, Dr. Thigpen concluded that plaintiff's ability to perform simple and repetitive tasks was unimpaired; his ability to perform detailed and complex tasks was unimpaired; and he was mildly impaired in other mental functional limitations, e.g., the ability to work with the public. AR 458. The ALJ found Dr. Thigpen's opinion persuasive, finding it "consistent with the overall evidence of record, which documents minimal mental health symptoms or treatment." AR 30. As set forth above, plaintiff's assessed RFC contained no mental limitations. AR 32.

////

---

[3] The ALJ also found plaintiff to have "no more than minimal limitation" due to depression. AR 29.

[4] "An impairment or combination of impairments in 'not severe' when medical and other evidence establish only a slight abnormality or combination of slight abnormality that would have no more than a minimal effect on an individual's ability to work." AR 27, citing 20 C.F.R. 404.1522, SSRs 85-28 and 16-3p.

Social Security Ruling 96-8p sets forth the policy interpretation of the Commissioner for assessing residual functional capacity. SSR 96-8p. Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); *see also Valencia v. Heckler*, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). RFC is assessed based on the relevant evidence in the case record, including the medical history, medical source statements, and subjective descriptions and observations made by the claimant, family, neighbors, friends, or other persons. 20 C.F.R. §§ 404.1545(a)(1), 404.1545(a)(3). When assessing RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work[.]" 20 C.F.R. §§ 404.1545(a)(4). While these regulations require the ALJ to *consider* the effect of all plaintiff's impairments in formulating the RFC, they do not require him to translate every non-severe impairment into a functional limitation in the RFC. *Rania v. Kijakazi*, No. 2:20-cv-01541 MCE CKD, 2021 WL 5771663, *3 (E.D. Cal. Dec. 6, 2021) (emphasis in original) (findings and recommendations adopted Jan. 10, 2022).

A similar case is instructive here. In *D.L.P. v. Kijakazi*, 2022 WL 4472064 (N.D. Cal. Sept. 26, 2022), the court considered a claim that the ALJ erred by failing to translate assessed mild mental limitations into the RFC, which resulted in a determination that the plaintiff could perform past relevant work. Plaintiff D.L.P. did "not challenge the finding that the mental impairments are mild, do not cause more than minimum limitation in his ability to perform basic mental work abilities, and are not severe." *Id.* at *2. Rather, as in this case, D.L.P. argued that "the ALJ's alleged error is material, [as] even a mild mental impairment" could impact the ability to perform highly skilled past relevant work. *Id.*

The *D.L.P* court reasoned that "the ALJ reviewed the evidence (including medical records, opinions, statements, and testimony) and explained his findings regarding various functions within each of the broad four paragraph B criteria in determining D.L.P.'s RFC." *Id*. at *3. "The ALJ also considered and discussed the medical evidence and opinions relating to D.L.P.'s mental impairments." *Id*. at *4. In the instant case, the ALJ similarly reviewed the evidence and opinions relating to plaintiff's mental impairments, and he did not err as to these

6

1 tasks.

2     The key issue is whether the ALJ properly incorporated his step two analysis of mental

3 impairment into the RFC determination. *See id*. at *4. At the end of this analysis, the ALJ stated:

> The limitations identified in the "paragraph B" criteria are not a [RFC] assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental [RFC] assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. **The following [RFC] reflects the degree of limitation the undersigned in the "paragraph B" mental function analysis.**

8 AR 31 (emphasis added); *see* 20 C.F.R. § 404.1545(e) ("we will consider the limiting effects of

9 all your impairment(s), even those that are not severe, in determining your [RFC.]"). This is the

10 last specific mention of mental impairments in the ALJ's decision; however, the ALJ stated that

11 he had "considered all testimony at the hearing, the medical evidence in the record, and the

12 opinion evidence" in determining the RFC. AR 36.

13     In *D.L.P.*, the court noted that "[s]ome courts have concluded that the same or similar

14 statements incorporating the ALJ's step two analysis into the RFC determination are merely

15 empty boilerplate statements, where 'the ALJ did not discuss or give reasoned consideration of

16 the plaintiff's [mental impairments] in his RFC assessment.'" 2022 WL 4472064, *4, citing

17 *Carlson v. Berryhill*, 2019 WL 1116241, at *17 (N.D. Cal. Mar. 10, 2019) (citing cases). This

18 line of cases is based on *Hutton v. Astrue*, 491 Fed. Appx. 850 (9th Cir. 2012), in which the Ninth

19 Circuit concluded that the ALJ erred by failing to consider plaintiff's assessed non-severe mental

20 impairment when determining the RFC. *Id*. at 851.

21     More recently, however, "[o]ther district courts have distinguished *Hutton*, ruling that if

22 the ALJ (1) states that he/she considered whether the claimant's mild metal limitations would

23 cause functional limitations and determined they would not; and (2) substantial evidence supports

24 that determination, then the ALJ's decision must be affirmed on appeal." *Hilda v. Kijakazi*, 2023

25 WL 1107867, *3 (C.D. Cal. Jan. 30, 2023) (collecting cases); *see D.L.P.*, 2022 WL 4472065, *4

26 (ALJ's statement incorporating step two finding "was not mere boilerplate," and ALJ sufficiently

27 considered non-severe mental impairments in the RFC), citing *Woods v. Kijakazi*, 32 F. 4th 785

28 (9th Cir. 2022).

In a 2023 case in this district, the court opined that "[t]his conflict appears to have been addressed by the Ninth Circuit's recent decision in [*Woods*, 32 F.4th 785]." *Tyson v. Kijakazi*, No. 1:21-cv-00688 BAM, 2023 WL 2313192, *4 (E.D. Cal. Mar. 1, 2023). The *Tyson* court continued:

> As in *Woods*, the Court likewise finds that the ALJ did not err by failing to include any mild mental limitations in the RFC. Cf. *Pugh v. Kijakazi*, No. 2:20-cv-02255 WBS CKD (SS), 2022 WL 1782517, at *5 (E.D. Cal. June 1, 2022), report and recommendation adopted, No. 2:20-cv-02255 WBS CKD (SS), 2022 WL 3358091 (E.D. Cal. Aug. 15, 2022) (noting scant legal support for plaintiff's assertion that mild mental limitations must be acknowledged in the RFC); *Rania v. Kijakazi*, No. 2:20-cv-01541 MCE CKD (SS), 2021 WL 5771663, at *3 (E.D. Cal. Dec. 6, 2021), report and recommendation approved, No. 2:20-cv-01541 MCE CKD (SS), 2022 WL 95228 (E.D. Cal. Jan. 10, 2022). There is no suggestion that the ALJ's finding of mild mental limitations is unsupported by substantial evidence in the record and Plaintiff does not challenge this finding. As in *Woods*, Plaintiff does not identify any evidence that the ALJ failed to consider or explain why the record does not support the ALJ's findings regarding her mental functioning. See *Woods*, 32 F.4th at 794.

*Id*. at *5.

Here, the ALJ's incorporation of the mild mental limitations assessed at step two was more than "mere boilerplate" and legally sufficient. The ALJ stated that he considered all medical, opinion, and other evidence in formulating the RFC, including plaintiff's ability to handle money, get along with authority figures, and perform a normal range of daily activities, as well as Dr. Thigpen's finding that plaintiff's ability to perform complex and detailed tasks was unimpaired. Moreover, the mental RFC found by the ALJ is supported by substantial evidence, and plaintiff has not shown error on this basis.

    *2. Physical Residual Functional Capacity*

Plaintiff next argues that the ALJ erred by failing to consider a "closed period of disability" beginning on the alleged onset date of August 1, 2020 and ending on October 26, 2021, as plaintiff returned to work the following month. Plaintiff argues that the medical evidence shows that, during this period, "plaintiff experienced significant Colitis and IBS symptoms and was simply unable to function at the level assessed in the RFC." ECF No. 14 at 21 Plaintiff contends that, during this period, "the evidence does not support the RFC assessment."

8

1  *Id*. at 22.

2      In his decision, the ALJ made clear that most of his findings related to the "continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity," i.e., the period between the alleged onset date of August 1, 2020 and November 6, 2021. AR 28-29. Essentially, plaintiff challenges the RFC finding for this period. Plaintiff asserts that, during this period, the evidence shows he suffered from

> uncontrolled diarrhea, bowel movement frequency and urgency, incontinence, and other gastrointestinal symptoms. The RFC assessment does not account for any absences during the period at issue, does not account for unscheduled bathroom breaks, does not account for need for ready bathroom access and proximity, and does not account for time off which can reasonably result from the identified symptoms. . . . Accordingly, the RFC is incomplete and unsupported by substantial evidence for the closed period of disability.

ECF No. 14 at 22.

    Defendant notes that the ALJ's RFC was "based on improvement in [plaintiff's] colitis with treatment and unremarkable physical examination findings." ECF No. 21 at 12, citing AR 33, 35. This is true, as far as it goes. However, symptom improvement must be evaluated in the context of the "overall diagnostic picture[.]" *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). And "there can be a great distance between a patient who responds to treatment and one who is able to enter the workforce[.]" *Garrison v. Colvin*, 759 F.3d 995, 1017, n.23 (9th Cir. 2014) (internal quotations and citation omitted).

    Here, the ALJ found that plaintiff showed "significant improvement" after starting mesalamine in August 2019, and that his symptoms were "stable" until he discontinued his medication in May 2020. AR 33-34. The ALJ continued:

> The claimant complained of frequent urgent and somewhat [bloody] bowel movements, despite medications, . . . in November 2020. As such, prednisone was added to his medication regimen; however, the claimant reported ongoing symptoms. By December 2020, he reported . . . bowel movements of four to five per day with intermittent rectal bleeding.

AR 34. In June 2021, "the claimant reported episodic fecal incontinence several times per week with lifting or straining and two to three loose bowel movements per day" and was prescribed

daily psyllium husk and Imodium. AR 34. "In October 2021, the claimant complained of worsening fecal urgency, incontinence, and soiling." AR 34.

The ALJ noted that, in the May 2021 function report, plaintiff "alleged that his ability to work was limited because of sudden bowel movement, stomach pain, constant fatigue," and mental symptoms. AR 32-33, citing AR 243-250. Completed during the time period under consideration, plaintiff's function report emphasized his need to take frequent bathroom breaks, which interfered with his ability to do normal activities. Plaintiff also described embarrassing bathroom accidents, pain, and fatigue. AR 243-250. The ALJ found that these allegations were "generally corroborated by third parties[.]" AR 33.

At the hearing, the ALJ questioned plaintiff about his need to take frequent, urgent bathroom breaks throughout the day, which didn't "coincide with . . . a scheduled work break." AR 773-774. Plaintiff testified that each such urgent break took a minimum of 10-15 minutes, and the ALJ wondered aloud what that meant "from a functional standpoint" and whether plaintiff would "eventually be terminated" for taking too many breaks. AR 774-775. This present-tense discussion did not address the 12-month period at issue, however, and the ALJ did not ask the VE about how the need for frequent, urgent 15-minute breaks would affect employment. The VE testified generally, however, that anything more than "six minutes an hour on an ongoing basis" off-task would preclude competitive work. AR 772.

In an unchallenged finding, the ALJ found plaintiff less than fully credible as to the intensity, persistence, and limiting effects of his symptoms, citing "rather mild findings" and improvement with treatment. AR 33. "However, the record demonstrates that Plaintiff had a history of ulcerative colitis, fecal frequency, urgency, and accidents . . . , and that Plaintiff sought treatment for these issues during the alleged disability period." *Lisa D. v. Kijakazi*, 2023 WL 5501215, *13 (S.D. Cal. Aug. 25, 2023).

> Nothing in the record, including the hypotheticals the ALJ posed to the vocational expert . . . demonstrates that the ALJ seriously considered Plaintiff's ulcerative colitis and associated limitations in crafting the RFC. **Plaintiff's colitis could significantly impact her ability to perform sustained activities in a work setting, such as if she needs to take frequent bathroom breaks or be located near a bathroom.** The ALJ's ambiguous explanation that Plaintiff's

10

> testimony is "not entirely consistent" with the record is insufficient. *See Treichler*[5], 775 F.3d at 1103 (finding the use of boilerplate language falls short of the ALJ's responsibility to provide "a discussion of the evidence").

*Id*. (emphasis added).

Here too, the ALJ did not account for certain limitations associated with the disease of colitis and found throughout the record: the need for frequent bathroom breaks, fecal urgency, and occasional bathroom accidents, all of which could require a more flexible work environment than a mere limitation to light work. While defendant argues that "plaintiff's layperson opinion" about his need for frequent bathroom breaks should not carry much weight (ECF No. 21 at 16), the ALJ should have "seriously considered" this issue in formulating the RFC, as it is a symptom of colitis and noted throughout the record. As in *Lisa D.*, this court finds that the ALJ erred by "failing to substantively consider plaintiff's ulcerative colitis." 2023 WL 5501215, *13, citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("an RFC that fails to take into account a claimant's limitations is defective."). Plaintiff is entitled to summary judgment on this claim.

V. **Remedy**

With error established, the court has the discretion to remand or reverse and award benefits. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id*. at 1021; *see also Dominguez v. Colvin*, 808 F.3d

---

[5] *Treichler v. Comm'r Soc. Sec. Admin*, 775 F.3d 1090 (9th Cir. 2014).

403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); *Treichler*, 775 F.3d at 1105 ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the record as a whole leaves open whether plaintiff was disabled during the relevant period and remand is the appropriate remedy. On remand, the ALJ should consider the evidence regarding plaintiff's ulcerative colitis and associated limitations when making the RFC determination. *See Lisa D.*, 2023 WL 5501215, *13. The court expresses no opinion regarding how the evidence should ultimately be weighed, and any ambiguities or inconsistencies resolved, on remand. The court also does not instruct the ALJ to credit any particular opinion or testimony. The ALJ may ultimately find plaintiff disabled during the entirety of the relevant period; may find plaintiff eligible for some type of closed period of disability benefits; or may find that plaintiff was never disabled during the relevant period, provided that the ALJ's determination complies with applicable legal standards and is supported by the record as a whole.

Accordingly, this matter should be remanded under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

## VI. Order

For the foregoing reasons, plaintiff's motion for summary judgment (ECF No. 14) is GRANTED; defendant's cross-motion for summary judgment (ECF No. 21) is DENIED, the Clerk is directed to enter judgment in favor of plaintiff; and this matter is remanded for further administrative proceedings.

Dated: February 20, 2025

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE